UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re                                                                                           Chapter 11
                                                                                                      Case No. 04-15389(BRL)
SALTIRE INDUSTRIAL, INC.,

                                    Debtors.
-------------------------------------------------------x

### Memorandum Endorsement And Extract From Bench Ruling Of May 3, 2005

On August 17, 2004 (the "Petition Date"), Saltire Industrial, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since ceasing operations almost twenty years ago, the Debtor's primary business has been the administration of certain alleged liabilities including post-retirement employee benefits, environmental claims and other business-risk liabilities retained from its prior operations. The Debtor is currently winding up its operations and liquidating its remaining assets for the benefit of its creditors.

Prior to the Petition Date, the United States of America (the "USA") brought an environmental enforcement action entitled *U.S. v. Acorn Engineering et al.*, Civil Action No. CV03-5470-WJR(FMOx) (the "Acorn Action"), that is currently pending in the United States District Court for the Central District of California (the "California Court"), in which the Debtor is one of twelve defendants. The parties conditionally entered into a consent decree on December 16, 2002 (the "Consent Decree") purporting to resolve their respective liabilities in connection with a "Superfund" site in southern California (the "Site"). The Consent Decree has been pending for nearly two and a half years without being approved by the California Court. As part of the settlement process, the Debtor signed escrow account and special deposit agreements (the "Agreements") and in July

1

2002, deposited $500,000 into an escrow account (the "Escrow Account"), the release of which is subject to the approval of the Consent Decree by the California Court.

By motion dated April 11, 2005 (the "Motion"), the USA is seeking a declaration and order from this Court, providing that the automatic stay does not apply to the funds in the Escrow Account because (1) the Escrow Account is not property that vests in the Debtor's estate, and (2) entry of the Consent Decree falls within the police and regulatory exception to the automatic stay pursuant to section 362(b)(4) of the Bankruptcy Code. Alternatively, the USA suggests in a footnote that this Court should lift or modify the stay, pursuant to either section 362(d)(1) or section 362(d)(A)(2) of the Bankruptcy Code, if the Court finds that the automatic stay does apply to the Escrow Account. In response, the Debtor argues that the Motion is procedurally defective and that the automatic stay does indeed apply to the Escrow Account. The official committee of unsecured creditors (the "Committee") joins the Debtor in opposition to the Motion.

*Discussion*

Section 362(a) of the Bankruptcy Code stays the commencement or continuation of all proceedings against a debtor that were or could have been commenced before the debtor filed for bankruptcy. The general policy behind this section is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected. *S.E.C. v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000).

Certain actions are exempt from this stay, however, including, under section 362(b)(4), "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power."

2

However, there is an exception to the exception in section 362(b)(4), because the section, by its own terms, limits the exception to the automatic stay to the "enforcement of a judgment other than a money judgment." *State of New York v. Mirant, New York, Inc.*, 300 B.R. 174, 178 (S.D.N.Y. 2003); *see also City of New York v. Exxon Corp*. 932 F.2d 1020, 1023 -1024 (2d Cir. 1991).

In *Exxon,* the Second Circuit held that "governmental actions under CERCLA to recover costs expended in response to completed environmental violations are not stayed by the violator's filing for bankruptcy." *Id.* at 1024 (citation omitted). In reaching that conclusion, the Court reasoned that "[t]he need to continue such deterrent actions, despite the pendency of a bankruptcy action, furthers the purpose of the regulatory exemption to the automatic stay squarely: to avoid frustrating necessary governmental functions by seeking refuge in bankruptcy court." *Id.* (internal quotation omitted).

However, even though governmental police power actions may continue against the debtor, any money judgment that might be obtained in such action may not be enforced against the debtor without relief from the automatic stay. *State of New York v. N. Storonske Cooperage Co., Inc.,* 174 B.R. 366, 373 (N.D.N.Y. 1994)(citing *In re New York Trap Rock Corp.,* 153 B.R. 642, 645 (Bankr. S.D.N.Y. 1993)).

> As the court explained in *New York Trap Rock:*
>
> This is so because the enforcement of money judgments is excluded from the exception expressed in 11 U.S.C. [§ 362(b)(4)]. Moreover, 11 U.S.C. § 362(a)(6) specifically stays any act to collect a prepetition claim against the debtor. Thus, such law suits [sic] simply result in liquidating the claim and eliminate the need to establish or estimate such claim in the bankruptcy court.

153 B.R. at 645.

3

The USA contends that the entry of the Consent Decree falls within the police and regulatory exception to the automatic stay set forth in section 362(b)(4) of the Bankruptcy Code. However, the Consent Decree in this case has no provision either to enjoin the Debtor from continuing to harm the environment or to compel the Debtor to take corrective action to remedy past harms. To the contrary, the Consent Decree only requires the Debtor to pay money,[1] and thus it is simply an action to collect a prepetition claim. *Cf. Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267 (3d Cir. 1984)(holding injunction was "not intended to provide compensation for past injuries. It was not reduceable to a sum certain. No monies were sought . . .").

Alternatively, the USA contends that the Court should lift or modify the automatic stay in the event that the Court finds that it is applicable to the Escrow Account. Unlike the *OPM* case cited by the U.S. in support of its argument, the condition precedent for disbursing the funds to the USA has not been satisfied in this case and accordingly, the Debtor retains an interest in the Escrow Account. Cf. *Hassett v. Blue Cross and Blue Shield of Greater New York (In re OPM Leasing Services, Inc.)*, 46 BR 661 (Bankr. S.D.N.Y. 1985)("[U]nder New York law legal title to property placed in escrow remains with the grantor until the occurrence of the condition specified in the escrow agreement"). The condition precedent to the release of the Escrow Account, the entry of the Consent Decree by the California Court, has not occurred and, according to the Debtor, may never occur.

Moreover, the Debtor is at a critical juncture in its case and close to filing a plan. The USA has filed other claims in this case arising from the Consent Decree – all which

---

[1] The Consent Decree also contains a ministerial requirement that the Debtor maintain any records it may have that relate to the Site.

4

04-15389-brl    Doc 129    Filed 05/03/05    Entered 05/03/05 14:30:45    Main Document
          Pg 5 of 5


should be resolved in toto. The USA has not demonstrated any urgency as to why it must act on the Consent Decree - three years after it was entered into - at this point.

*Conclusion*

For all the foregoing reasons, the USA's Motion is denied in its entirety.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.

Dated:  New York, New York
        May 3, 2005

/s/Burton R. Lifland_____
United States Bankruptcy Court